# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

JERMAINE HAMPTON,

    Plaintiff

v.

STATE OF NEVADA, et al.,

    Defendants

Case No.: 2:20-cv-00578-APG-DJA

**Order**

[ECF Nos. 69, 71, 72, 77, 96, 97]

Plaintiff Jermaine Hampton sues Las Vegas Metropolitan Police Department (LVMPD) officers Todd Edwards and David Lunt and deputy district attorneys Sarah Overly and Stephanie Getter under 42 U.S.C. § 1983.  His claims arise out of his arrest by Edwards and Lunt, and his subsequent prosecution for being a felon in possession of a weapon by Overly and Getter.[1]

The parties are familiar with the facts, so I give only a brief overview here.  In June 2019, Hampton got in a verbal argument with his former wife Chanel, and she left the apartment and called the police.  Chanel reported that Hampton was a felon who had a gun, which she hid in a closet in the apartment.  Officer Lunt went to the apartment and asked Hampton if the officers could come inside and do a visual check of the apartment.  Hampton agreed, so the officers did a sweep of the apartment and left.  About ten minutes later, Lunt returned and asked Hampton if he would step outside for further questioning.  When Hampton stepped outside, two other officers grabbed his arms, Lunt handcuffed him, and placed him in a police car.  Hampton contends the handcuffs were too tight and injured his shoulder.

Officer Edwards later arrived on the scene and procured a telephonic search warrant for the apartment, where the officers found a gun where Chanel said she had hidden it.  Hampton

---

[1] Hampton's claims against Overly and Getter are addressed by separate order.

asserts that Edwards did not adequately investigate before arresting him for possessing a firearm based on his former wife's uncorroborated allegations. He argues this resulted in the judge in another case revoking his bail and sentencing him more harshly, even though he was later found not guilty of the gun possession charge. He also contends that Edwards altered a search warrant for a mouth swab to obtain his DNA by changing the name on the written search warrant, which was Jermaine Gardner, to his name (Jermaine Hampton). Edwards also allegedly altered the time on the warrant.

In his third amended complaint, Hampton asserts against Lunt claims under the Eighth, Fifth, and Fourteenth Amendments for seizing Hampton without probable cause, detaining him in handcuffs, and handcuffing him too tightly. ECF No. 64 at 5-7. Hampton asserts against Edwards claims under the Fourth, Eighth, and Fourteenth Amendments for arresting him without probable cause, altering the name on the search warrant, and giving the incorrect time for the search warrant. *Id.* at 8-13.

Lunt and Edwards moved to dismiss the third amended complaint. ECF No. 69. They contended that the Eighth and Fifth Amendments do not apply, that Hampton's Fourteenth Amendment due process claim is more suitably addressed under the Fourth Amendment, and that he stated his Fourteenth Amendment equal protection claim in only conclusory fashion. Lunt and Edwards argued they had probable cause to seize and arrest Hampton and that the seizure was also lawful as incident to the execution of a search warrant. Edwards argued that his alteration of the search warrant did not impact Hampton's constitutional rights because he conformed the warrant to what the authorizing judge approved. Lunt argued that the third amended complaint did not allege that he was the one who applied the handcuffs, so it failed to

state against him an excessive force claim for tight handcuffing.  Finally, both Lunt and Edwards asserted they are entitled to qualified immunity.

In response to this motion, Hampton filed a non-opposition and a motion to amend to more fully assert the factual bases for his claims. ECF Nos. 71, 72.  In doing so, Hampton conceded that the Eighth and Fifth Amendments do not apply, and he attached a proposed fourth amended complaint.  Magistrate Judge Albregts recommended that I deny Hampton's motion to amend because Hampton did not show good cause for failing to amend before the expiration of the scheduling order's deadline to amend pleadings. ECF No. 77.  Hampton objected, arguing that he acted diligently but was hampered in his efforts to obtain and review the body-cam videos from which he was able to make more detailed factual allegations. ECF No. 80.

While the motion to dismiss, motion to amend, report and recommendation, and objection were pending, Lunt and Edwards each moved for summary judgment. ECF Nos. 96, 97.  They argue they did not violate Hampton's constitutional rights and, even if they did, they are entitled to qualified immunity.  Hampton opposes both motions. ECF Nos. 102; 102-1.

I deny the motion to dismiss, modify the magistrate judge's report and recommendation, and grant Hampton leave to amend one claim to add factual allegations to support it.  I grant Edwards' motion for summary judgment.  I grant in part Lunt's motion for summary judgment. Finally, I grant leave for both Hampton and Lunt to move for summary judgment on the one aspect of Hampton's Fourth Amendment claim that remains pending.

I. ANALYSIS

A. Motion to Dismiss, Motion to Amend, and Report and Recommendation

Given the procedural posture of this case, where the parties have now briefed summary judgment motions, I deny the defendants' motion to dismiss and modify the magistrate judge's

3

recommendation that Hampton's motion to amend be denied.  As discussed below, all of Hampton's claims fail at summary judgment, with the exception of his Fourth Amendment claim that he was held in handcuffs for an unreasonable amount of time.  In the interest of justice and in conformity with the policy of resolving cases on the merits, I allow Hampton to amend that claim only to allege facts showing that he was detained in handcuffs for an unreasonable amount of time. *See* ECF No. 71 at 10-15 (proposed fourth amended complaint's allegations regarding detention in handcuffs for unreasonable amount of time).

### B.  Summary Judgment Motions

Summary judgment is appropriate if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018) ("To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial.").  I view the evidence and reasonable inferences in the light most favorable to the non-moving party. *Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 440-41 (9th Cir. 2017).

To establish a claim under 42 U.S.C. § 1983, a plaintiff must show that the defendant acted under color of law and the defendant's "action resulted in a deprivation of a constitutional right or a federal statutory right." *McDade v. West*, 223 F.3d 1135, 1139 (9th Cir. 2000). The defendants do not dispute that they acted under color of law. Thus, the question is whether Hampton has presented sufficient evidence to raise a genuine dispute that the officers violated his constitutional rights.

Additionally, the defendants raise the issue of qualified immunity. "Qualified immunity shields government officials from civil liability unless a plaintiff establishes that: (1) the official violated a constitutional right; and (2) that right was clearly established at the time of the challenged conduct, such that every reasonable official would have understood that what he is doing violates that right." *Morales v. Fry*, 873 F.3d 817, 821 (9th Cir. 2017) (simplified). I may answer these two questions in any order. *Alston v. Read*, 663 F.3d 1094, 1098 (9th Cir. 2011).

Hampton bears the burden of showing the right at issue was clearly established. *Id.* He does not necessarily have to point to a case directly on point, but "existing precedent must have placed the statutory or constitutional question beyond debate, such that every reasonable official . . . would have understood that he was violating a clearly established right." *Morales*, 873 F.3d at 823 (simplified). Whether the right at issue was clearly established is a question of law for the court. *Id.* at 821.

### 1.  Fourth Amendment - Unlawful Seizure

Lunt and Edwards argue that they had probable cause to arrest Hampton based on Chanel's statements and their corroboration of her statement that Hampton was a felon on probation who could not possess a gun. They also contend that his detention was lawful as incident to the execution of a search warrant. Lunt and Edwards contend that Hampton is

precluded from relitigating this issue because the state court held probable cause existed for the criminal charge against him.  Alternatively, they argue they are entitled to qualified immunity.

Hampton responds that he should not be precluded from relitigating this issue because the state court judge was biased due to her own domestic violence issues.  On the merits, Hampton argues that he was seized before the officers obtained a warrant to search the apartment or his person, so the officers cannot rely on a seizure incident to a warrant to support the detention.  He also contends that probable cause did not support the arrest because the officers relied solely on Chanel's uncorroborated statement.  He asserts that because Chanel claimed to have found the gun weeks earlier and hid it, the officers could not have reasonably believed that he possessed it.  Finally, he contends that he was detained an unreasonably long time because he was held for three hours while the officers sought and obtained the warrant and conducted the search.  He contends that the officers are not entitled to qualified immunity because the officers held him for more than two hours before a search warrant was obtained and state law allows for only a one-hour investigatory detention.

*a. Probable Cause for the Arrest*

"Probable cause exists when the facts and circumstances within the officer's knowledge are sufficient to cause a reasonably prudent person to believe that a crime has been committed." *Lassiter v. City of Bremerton*, 556 F.3d 1049, 1053 (9th Cir. 2009).  To establish probable cause, an officer "may not solely rely on the claim of a citizen witness that he was a victim of a crime, but must independently investigate the basis of the witness' knowledge or interview other witnesses." *Peng v. Mei Chin Penghu*, 335 F.3d 970, 978 (9th Cir. 2003) (quotation omitted). "A sufficient basis of knowledge is established if the victim provides facts sufficiently detailed to

1  cause a reasonable person to believe a crime had been committed and the named suspect was the

2  perpetrator." *Id.* (quotation omitted).

3          Even viewing the facts in the light most favorable to Hampton, no genuine dispute

4  remains that the officers had probable cause to believe that Hampton committed the offense of

5  being a felon in possession of a firearm. *See* Nev. Rev. Stat. § 202.360(1)(b) (making it unlawful

6  for a person to "own or have in his or her possession or under his or her custody or control any

7  firearm if the person . . . [h]as been convicted of a felony . . . ."). The officers did not rely solely

8  on Chanel's statements. They spoke to Hampton during their initial walk through the apartment,

9  who corroborated that he and Chanel had a verbal argument and that Chanel and the children had

10  left the apartment. ECF No. 99 (video 417-40). That is consistent with what Chanel reported on

11  the 911 call, as well as with her statements to police in the parking lot of a nearby fast-food

12  restaurant. ECF No. 99 (Ex. V., audio of 911 call; videos 417-36, 417-38). Additionally, the

13  officers corroborated Chanel's detailed factual statements regarding Hampton's name, date of

14  birth, the fact that he was previously convicted of a felony offense in Kentucky, and that he was

15  currently on probation. ECF Nos. 96-9 at 3; 96-10 at 4. Upon searching the apartment, they also

16  located a gun that matched Chanel's description of it and found it where she said they would.

17  ECF No. 99 (video 417-36, 417-38).

18          That Chanel hid the gun does not mean that the officers lacked probable cause to believe

19  that Hampton had possessed the gun before she hid it. And the fact that the jury acquitted

20  Hampton under the higher standard of beyond a reasonable doubt does not negate probable

21  cause. *Borunda v. Richmond*, 885 F.2d 1384, 1389 (9th Cir. 1988) ("The fact that plaintiffs had

22  been previously acquitted in the criminal case is far removed from establishing whether probable

23  cause existed for their arrests" because the "state's failure to prove guilt beyond a reasonable

doubt does not mean in connection with the arrests that it did not meet the lesser probable cause standard."). The officers obtained a judicially authorized search warrant for the premises and for Hampton's epithelial cells based on this same information. ECF No. 96-10. Even if Hampton is not precluded from relitigating this issue,[2] no genuine dispute remains that the officers had probable cause to detain and arrest him.

Moreover, even if the officers were mistaken about whether they had probable cause, they would be entitled to qualified immunity because Hampton has not pointed to clearly established law that would have put the officers on notice that their actions violated Hampton's constitutional rights. I therefore grant the defendants' motion for summary judgment on whether their decision to detain and arrest Hampton was supported by probable cause.

### b. Length of Detention in Handcuffs Pre- and Post-Warrant

The third amended complaint challenges not only whether Hampton's seizure was supported by probable cause, but also the length of detention in handcuffs. The third amended complaint alleges that Lunt detained Hampton in handcuffs on the scene for three hours. ECF No. 64 at 6-7. Lunt's motion does not address Hampton's allegations that the length and manner of the detention were unreasonable, particularly with respect to the time between when he was first placed in handcuffs and when a search warrant was obtained. Although Lunt makes some arguments about this claim in his reply brief,[3] I do not consider arguments raised for the first time in a reply. *See Vasquez v. Rackauckas*, 734 F.3d 1025, 1054 (9th Cir. 2013). Because Lunt's summary judgment motion does not address this aspect of Hampton's Fourth Amendment unreasonable seizure claim, it remains pending. However, because I am allowing Hampton to

---

[2] *See Haupt v. Dillard*, 17 F.3d 285, 288-90 (9th Cir. 1994), *as amended* (Apr. 15, 1994).

[3] *See* ECF No. 104 at 9-10.

1    amend to plead this claim with greater factual detail, and because summary judgment may be

2    appropriate, I will extend the time for both sides to move for summary judgment on this claim.

3                        2.  Fourth Amendment - Excessive Force

4            Lunt argues that he did not use excessive force in applying the handcuffs because he did

5    not ignore complaints of pain, there is no evidence that he observed injuries to Hampton related

6    to the handcuffs, and Hampton presented no evidence that he suffered an injury from the

7    handcuffs.  Alternatively, he contends that he is entitled to qualified immunity.

8            Hampton responds that Lunt ignored his initial statement that the handcuffs were tight,

9    and it was not until over an hour later that another officer loosened them.  Hampton states that he

10   has suffered nerve damage because his hand becomes numb.  He asserts that Lunt is not entitled

11   to qualified immunity because Lunt ignored his comment that the handcuffs were too tight.

12           "It is well-established that overly tight handcuffing can constitute excessive force." *Wall

13   v. Cnty. of Orange*, 364 F.3d 1107, 1112 (9th Cir. 2004).  To support an excessive force claim

14   based on tight handcuffing, the Ninth Circuit generally has required (1) proof of visible injuries

15   or (2) complaints of pain or requests to loosen the cuffs that went ignored. *See Meredith v. Erath*,

16   342 F.3d 1057, 1060, 1063 (9th Cir. 2003) (extensive bruising); *Alexander v. Cnty. of Los

17   Angeles*, 64 F.3d 1315, 1322-23 (9th Cir. 1995) (swelling and bruising plus refusal to loosen

18   cuffs after the plaintiff complained of pain); *Palmer v. Sanderson*, 9 F.3d 1433, 1436 (9th Cir.

19   1993) (bruising and refusal to loosen after being told the handcuffs were too tight).  The Ninth

20   Circuit has also held that allegations of injury from tight handcuffing without medical records or

21   other evidence of injury are insufficient to establish an excessive force claim. *Arpin v. Santa

22   Clara Valley Transp. Agency*, 261 F.3d 912, 922 (9th Cir. 2001) (holding summary judgment

23   was appropriate where the plaintiff did not provide "any medical records to support her claim

1   that she suffered injury as a result of being handcuffed”); *Foster v. Metro. Airports Comm'n*, 914

2   F.2d 1076, 1082 (9th Cir. 1990) (holding summary judgment appropriate where the plaintiff

3   presented “no medical records indicating he suffered any long-term injury as a result of the

4   handcuffs”).

5          Even if a reasonable jury could find that Lunt applied the handcuffs too tightly and did

6   not loosen them despite Hampton stating the cuffs were tight, Lunt is entitled to summary

7   judgment under *Arpin* and *Foster*.[4]  There is no evidence of visible injuries to Hampton.  Lunt

8   has presented evidence that Hampton never sought medical attention for injuries from the

9   handcuffing. *See* ECF Nos. 96-16 through 96-18.  Hampton has presented no evidence that he

10  sought or received medical treatment.  He claims that he experiences numbness and tingling,[5] but

11  he presents no evidence that he sought medical treatment for this condition, that he has been

12  diagnosed with any injuries, or that those injuries were caused by the tight handcuffing.  I

13  therefore grant summary judgment in Lunt's favor on this claim.

14                    3.  Alterations to the Warrant

15         Edwards argues that he did not violate any constitutional right by altering the warrant or

16  putting the incorrect time on the warrant because the authorizing judge knew the correct identity

17

18  [4] I have previously questioned whether *Arpin* is correct on this point in light of the Supreme
    Court's decision in *Wilkins v. Gaddy* that “clarified that in an excessive force claim, the focus is
19  on the force used, not the resulting injury.” *Williams v. Clark*, No. 2:14-cv-00414-APG-PAL,
    2016 WL 4445985, at *3 (D. Nev. Aug. 17, 2016) (citing *Wilkins*, 559 U.S. 34, 38 (2010)
20  (“Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately
    counts.  An inmate who is gratuitously beaten by guards does not lose his ability to pursue an
21  excessive force claim merely because he has the good fortune to escape without serious
    injury.”)).  However, the Ninth Circuit has continued to follow *Arpin* in tight-handcuffing cases,
22  even after *Wilkins*. *See Reyes v. City of Santa Ana*, 832 F. App'x 487, 491 (9th Cir. 2020)
    (“Summary judgment on a tight handcuffing Fourth Amendment excessive force claim is merited
23  if a plaintiff does not seek medical help or offer supporting documentary evidence.”).

    [5] ECF No. 102-1 at 10.

                                           10

of the person for whom the warrant was issued and knew that the officers were requesting a nighttime warrant.  Alternatively, he asserts that he is entitled to qualified immunity.

Hampton responds that the Fourth Amendment requires a warrant to particularly describe the person to be seized and that the warrant for his epithelial cells named the wrong person.  He asserts that Edwards admitted to altering the warrant.  He also argues Edwards is not entitled to qualified immunity because his conduct violated clearly established law under "penal code 224.4 and ordinance 199.220," which he contends prohibit anyone from tampering with or altering a search warrant. ECF No. 102 at 9.  And he contends Edwards violated Federal Rule of Criminal Procedure 41(e)(3)(d), which requires the exact date and time to be entered on the warrant, because Edwards misstated the time on the warrant.  He also contends Edwards violated Rule 41 because he did not read the search warrant verbatim to the authorizing judge.

There is no genuine dispute that when Edwards sought the telephonic search warrant, he verbally advised the authorizing judge of the correct facts about Hampton's name and date of birth. ECF No. 96-10 at 3.  Edwards mistakenly wrote the name Jermaine Gardner on the written search warrant, but later altered it to Hampton. ECF Nos. 96-4; 102 at 41-42.  Additionally, although Edwards stated the time was 1131 hours, there is no genuine dispute that the authorizing judge knew what time it was and that Edwards was seeking a nighttime warrant. ECF No. 96-10 at 2 (stating both that the time was 1131 hours and that he was investigating a crime at around 2120 hours), 4 (authorizing a nighttime search).

Even if altering the written warrant to conform to what the authorizing judge verbally approved violated Hampton's constitutional rights, Hampton has not pointed to clearly established law that would have put Edwards on notice that he was violating Hampton's rights. Hampton relies on Federal Rule of Criminal Procedure 41, which does not apply to this arrest

because Edwards was operating under state law.  But even if it applied, violating a federal rule does not necessarily equate to violating a federal constitutional or statutory right, and does not deprive Edwards of qualified immunity. *Jones v. Kirchner*, 835 F.3d 74, 84 (D.C. Cir. 2016) (noting that violations of "rules of criminal procedure and other sub-constitutional bodies of law . . . may be unlawful but are not necessarily unconstitutional").  "In general, the violation of a state or federal statute by an official is not enough to deprive the official in question of qualified immunity, unless that statute or regulation provides the basis for the cause of action sued upon." *Schwenk v. Hartford*, 204 F.3d 1187, 1205 n.17 (9th Cir. 2000) (citing *Davis v. Scherer*, 468 U.S. 183, 194 n.12 (1984)).  For this same reason, Hampton's reliance on Nevada state laws about not altering warrants does not show that Edwards violated clearly established federal constitutional or statutory rights, nor does Edwards' alleged violation of these laws deprive him of qualified immunity. *Id.*  Because Hampton has not pointed to clearly established law, Edwards is entitled to qualified immunity, and I grant his motion as to this claim.

### 4.  Equal Protection

Lunt contends there is no evidentiary basis for an equal protection claim because Hampton merely asserts in conclusory fashion that he was treated differently.  Lunt argues that, in any event, he is entitled to qualified immunity.

Hampton responds that Lunt's decision to handcuff him based on Chanel's uncorroborated statement rather than see if he would voluntarily talk to the police was motivated by race discrimination.  In doing so, he compares his treatment to that of Kyle Rittenhouse in Wisconsin, a white person who Hampton asserts was not arrested despite witnesses telling police officers that Rittenhouse was seen carrying an assault style rifle and had shot multiple people. Hampton also contends that the law allows for an equal protection claim for a class of one.

12

1    Hampton notes that Edwards did not move for summary judgment on this claim. ECF No. 102 at

2    3.  In reply, Edwards contends that there was no such claim pleaded against him and Hampton

3    cannot raise it for the first time at summary judgment.

4            Even if Hampton alleged an equal protection claim against both Lunt and Edwards, it

5    fails at summary judgment under either a class-of-one or race-discrimination theory.  Hampton

6    has presented no evidence that he was "intentionally treated differently from others similarly

7    situated and that there is no rational basis for the difference in treatment." *Engquist v. Oregon*

8    *Dep't of Agric.*, 478 F.3d 985, 993 (9th Cir. 2007) (quotation omitted).  Nor has he presented

9    evidence that the officers were motivated by racial animus. *Furnace v. Sullivan*, 705 F.3d 1021,

10   1030 (9th Cir. 2013) ("To state a claim under 42 U.S.C. § 1983 for a violation of the Equal

11   Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted

12   with an intent or purpose to discriminate against the plaintiff based upon membership in a

13   protected class." (quotation omitted)).  Hampton refers to the case of Rittenhouse, but Hampton

14   presents no evidence about the circumstances involving Rittenhouse, and he admits in his brief

15   that Rittenhouse was in Wisconsin and that case involved different circumstances and different

16   law enforcement officers.  There is no evidence that any officer in this case used derogatory

17   terms or would have treated a similarly situated individual outside of Hampton's race differently.

18   Hampton's reference to disparate treatment by law enforcement generally does not suffice to

19   raise a genuine dispute in this case.  I therefore grant the defendants' motions for summary

20   judgment on this claim.

21           5.  Official Capacity Claims

22           Lunt and Edwards argue that to the extent Hampton asserts a claim against them in their

23   official capacities, there is no evidence that any violation (if there was one) was caused by

13

1   LVMPD policies or practices.  Hampton responds that Edwards was acting as lead investigator

2   on the case, and he violated LVMPD policy on investigatory detentions not exceeding 60

3   minutes.  He thus contends that Edwards is the moving force behind this violation.  He also

4   contends that Edwards violated LVMPD policy by not intervening to release him from handcuffs

5   sooner.  And he contends that Lunt violated LVMPD policy on the use of force.

6          Hampton has failed to demonstrate how the officers could be liable in their official

7   capacities on any claim under any theory of *Monell*[6] liability.  Hampton has not shown an

8   unconstitutional official policy because he asserts that the officers violated official LVMPD

9   policy. *See Gordon v. Cnty. of Orange*, 6 F.4th 961, 973 (9th Cir. 2021).  He also has not

10  presented any evidence of a longstanding practice or custom because he presents evidence of

11  only his own interaction with the police. *Id.* at 973-74.  Finally, he has not presented evidence

12  that Edwards or Lunt are officials with policymaking authority or that a policymaking official

13  ratified their conduct. *Id.* at 974.  I therefore grant their motions for summary judgment on any

14  official capacity claims.

15  **II.  CONCLUSION**

16         I THEREFORE ORDER that defendants Todd Edwards and David Lunt's motion to

17  dismiss **(ECF No. 69) is DENIED**.

18         I FURTHER ORDER that Magistrate Judge Albregts' report and recommendation **(ECF

19  No. 77) is modified** and plaintiff Jermaine Hampton's motion to amend **(ECF Nos. 71, 72) is

20  GRANTED in part**.  The third amended complaint is amended to add the factual allegations in

21  the proposed fourth amended complaint regarding the length of Hampton's detention in

22

23

---

[6] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

handcuffs.  Hampton need not file an amended complaint and Lunt need not file an amended answer.  As ordered below, the parties may instead move for summary judgment.

I FURTHER ORDER that defendant Todd Edwards' motion for summary judgment **(ECF No. 97) is GRANTED**.

I FURTHER ORDER that defendant David Lunt's motion for summary judgment **(ECF No. 96) is GRANTED in part**.  The motion is granted as to all of plaintiff Jermaine Hampton's claims against Lunt except the Fourth Amendment claim related to the length of detention in handcuffs.

I FURTHER ORDER that plaintiff Jermaine Hampton and defendant David Lunt may move for summary judgment on the Fourth Amendment claim related to the length of detention in handcuffs by March 11, 2022.  If no party moves for summary judgment by that date, then the proposed joint pretrial order is due by April 11, 2022.

I FURTHER ORDER that **ECF Nos. 96 and 97 and all attachments shall be UNSEALED**.  However, **ECF No. 100 and all attachments shall remain SEALED**.

DATED this 15th day of February, 2022.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE